UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GORDON DAVENPORT,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security[1],<br><br>    Defendant. | NO.  CV-11-03063-JLQ<br><br>MEMORANDUM OPINION AND ORDER RE:  MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Cross-Motions for Summary Judgment. (ECF NO. 15 & 17).  Plaintiff is represented by **D. James Tree**.  Defendant is represented by Assistant United States Attorney **Pamela J. DeRusha** and Special Assistant United States Attorney **Robert Van Saghi**.  This matter was previously before Magistrate Judge Imbrogno and reassigned to the undersigned for all further proceedings on February 5, 2013.  The court has reviewed the administrative record and the parties' briefs and the case has been submitted for decision without oral argument.

This court's role on review of the decision of the Commissioner and Administrative Law Judge (ALJ) is limited.  The court reviews that decision to determine if it was supported by substantial evidence and contains a correct application of the law.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Michael Astrue as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. 405(g).

ORDER - 1

(9th Cir. 2009). This court is obligated to affirm the ALJ's findings if they are supported by the evidence and reasonable inferences to be drawn therefrom. *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.

## I. JURISDICTION

In September 2006, Plaintiff/Claimant Gordon Davenport filed an application for SSI and DIB alleging a disability onset date of September 1, 2006. Plaintiff alleges disability primarily attributable to degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), depression, and his cardiac condition (sick sinus syndrome status post-pacemaker). His application was denied initially, and on reconsideration. After timely requesting a hearing, Plaintiff appeared before Administrative Law Judge R.S. Chester on March 25, 2009. (Transcript at ECF No. 11-2 pages 36-82). The ALJ issued a decision denying benefits on May 28, 2009. (ECF No. 11-2, p. 11-25). Plaintiff filed a request for review with the Appeals Council, which was denied on April 26, 2011. The decision of the ALJ became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).

## II. SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is, benefits are denied. If he is not, the decision maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the inquiry proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921

(9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### III. STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

### IV. STATEMENT OF FACTS

The facts are contained in the medical records, administrative transcript, and

ORDER - 4

the ALJ's decision, and are only briefly summarized here. At the time the ALJ issued his decision, Plaintiff was 46 years old. Plaintiff did not complete high school but obtained a GED. He served in the Army from 1986 to 1989. He has held a variety of physical labor jobs. (*Id*. at 218). Plaintiff had worked as a general laborer, worked road construction, and has worked as what he describes as a "handracker" shoveling sugar, stacking bundles, and moving pallets. (ECF No. 11-219-220). He worked as yard hand, delivered newspapers, and worked as a ranch hand. (Id. at 221-225). The record establishes that Plaintiff had not worked since 2002. (ECF No. 11-2, p. 200).

   Plaintiff claimed disability based primarily on degenerative disc disease and cardiac condition (sick sinus syndrome post-pacemaker implantation). The ALJ also found Plaintiff's chronic obstructive pulmonary disease ("COPD") to be a severe impairment. Plaintiff also had more recently alleged problems with depression, which the ALJ found to be mild and non-severe.

   The ALJ found Plaintiff was not disabled. Plaintiff raises several challenges to that determination, including: 1) that the ALJ improperly determined he could return to past relevant work; 2) that the ALJ improperly rejected the opinions of Plaintiff's treating providers; 3) the ALJ improperly rejected Plaintiff's subjective complaints; and 4) the ALJ erred in not disqualifying himself from conducting the hearing. (ECF No. 16, p. 8).

## V. COMMISSIONER'S FINDINGS

  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since September 1, 2006, the alleged onset date.

  At step two, the ALJ found the medical evidence established the following severe impairments: chronic obstructive pulmonary disease (COPD); degenerative disc disease; and heart disease, sick sinus syndrome, status post-pace maker placement. (ECF No. 11-2, p. 14). The ALJ found Plaintiff's assertions of depression and anxiety to be non-severe. (*Id.* at 15-16).

ORDER - 5

At Step 3, the ALJ determined that the Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1. Specifically, the ALJ considered whether Plaintiff met Listing 1.04 for degenerative disc disease, or Listing 4.05 for heart condition. The ALJ also considered the Plaintiff's alleged mental impairments, even though he had found them to be non-severe, and determined they did not meet Listing 12.04.

At Step 4, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform the full range of light work, except Plaintiff could only occasionally stoop, kneel, crouch, crawl, or climb ladders, ropes, and scaffolds. (ECF No. 11-2, p. 17). In making this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (*Id.* at 20). The ALJ specifically found that the Plaintiff's testimony concerning "the intensity, persistence and limiting effects of his cardiac symptoms" was not supported by the record. Additionally, the ALJ found "nor is the claimant's testimony of neck and back pain supported by the medical record or even his own complaints to his health care providers." (*Id.* at 20). The ALJ noted that at a May 2007 office visit to Dr. Hansen, an orthopedist, Plaintiff reported his neck pain as a 2 out of 10. The ALJ found that "inconsistencies in allegations regarding the exact nature of his hand numbness discredits the claimant's veracity regarding not only the nature of his alleged impairment but the limiting effects it might actually have." (*Id.* at 21). The ALJ also observed that "the record is full of statements by the claimant that he needed some type of medical support of disability despite his prior doctors refusing to give such statements." (*Id.* at 22). The ALJ ultimately concluded at Step 4:

    The claimant's allegations of limitations due to his cardiac condition, his

ORDER - 6

spinal conditions, and his respiratory conditions are simply not supported by the objective medical findings in the record and are contradicted within the record and the claimant's own testimony. (*Id*. at 23).

The ALJ then relied on the testimony of vocational expert, Daniel McKinney, and concluded that Plaintiff was capable of his past relevant work as a security guard.

Although the ALJ concluded Plaintiff was able to perform his past relevant work, he proceeded to Step 5, and found, with the assistance of the vocational expert, that Plaintiff could perform the jobs of Assembler (Dictionary of Occupational Titles # 739.687-030) and Inspector (small parts and products or garment) (DOT # DOT 733.687-042 and DOT 679.685.010). The ALJ found that significant numbers of these jobs existed both in the national and regional economy and that Plaintiff was capable of making a successful adjustment to these types of jobs.

## VI. ISSUES

Plaintiff raises four issues on appeal: 1) the ALJ erred in finding that Plaintiff could return to past relevant work at Step 4; 2) the ALJ erred in improperly rejecting the opinions of Plaintiff's treating medical providers; 3) the ALJ erred in rejecting Plaintiff's subjective complaints; and 4) the ALJ erred in not disqualifying himself from the hearing. (ECF 16, p. 8).

## VII. DISCUSSION

**A. <u>Did the ALJ err in finding, at Step 4, that Plaintiff could return to his past relevant work</u>?**

Plaintiff argues that the ALJ did not properly consider whether his prior work as a security guard constituted "past relevant work" under the Regulations. Plaintiff argues that in order to be past relevant work, the work must have been performed within the last 15 years. Plaintiff states that the work occurred in 1993 and that is "more than 15 years prior to the alleged onset date." (ECF No. 16, p. 10). However, the alleged onset date is September 1, 2006, and thus 1993 is

ORDER - 7

thirteen years prior. The ALJ's opinion was issued in 2009, sixteen years after 1993. The Regulation cited by Plaintiff states in part: "We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled...applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." 20 CFR 404.1565(a). The Regulation further provides that the 15-year time period is a "guide intended to insure that remote work experience is not currently applied." *Id.* It appears that the security guard work in 1993 was close enough in time to be relevant, but even if it was slightly outside the 15-year period, as measured from the date of the hearing before the ALJ, any error in considering it was harmless.

The Commissioner's brief (ECF No. 18, p. 7) argues that even if considering the security guard work as past relevant work was improper, the ALJ still proceeded to Step 5 and found that Plaintiff could perform other work that exists in significant number in the national economy. Therefore, the error, if any, in considering the security guard position which Plaintiff last held fifteen years and a few months before his disability hearing, was harmless. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five.").

B. **Did the ALJ err in rejecting the opinions of treating providers?**

Plaintiff contends the ALJ rejected the opinions of Plaintiff's treating medical providers, specifically Dr. Gehrett, Dr. Margret, Dr. Thompson, Dr. Lehmann, and Dr. Li. (ECF No. 16, p. 12).

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: 1) treating physicians, who actually treat the claimant; 2) examining physicians, who examine but do not treat

ORDER - 8

the claimant; and 3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of the treating physician than to the opinions of non-treating physicians. *Id.* If a treating physician's opinion is uncontradicted, it may be rejected only for clear and convincing reasons, and if it is contradicted, it may be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Id.* An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc.Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004) see also *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The court now addresses the ALJ's consideration of the following five providers:

(1) **Dr. Gehrett** - The ALJ considered the opinion of Dr. Gehrett and stated it is "given little weight as the form states on its face that the claimant had yet to have a thorough evaluation." (ECF No. 11-2, p. 22). The ALJ also noted that recent objective testing, including imaging studies, did not support the severity of functional limitation suggested by Dr. Gehrett.

(2) **Dr. Margret** - The Commissioner acknowledges that the ALJ did not discuss Dr. Margret's opinion, but rather only noted her 2008 diagnosis of dysthymia. (ECF No. 11-2, p. 15). The Commissioner points out that Dr. Margret only saw Plaintiff on one occasion. The note from Dr. Margret's 45 minute visit in December 2008 is at (ECF No. 11, p. 526-529). According to the note, Plaintiff expressed frustration and stress at the Social Security disability application process. Although Dr. Margret, a psychiatry resident, lists a diagnosis of dsythymia, she also states that Plaintiff would benefit from a follow up "to assess for depression." (*Id*. at 528).

(3) **Dr. Thompson** - The Commissioner again acknowledges that the ALJ

ORDER - 9

did not discuss Dr. Thompson's opinions. (ECF No. 18, p.11). However, the Commissioner argues that Dr. Thompson was not a treating or examining physician, rather just someone who reviewed the records. In Reply (ECF No. 23), Plaintiff acknowledges that Dr. Thompson was not a treating provider, thus rendering Plaintiff's initial framing of the issue misleading. However, Plaintiff argues that the opinion should still be entitled to "at least a little weight." (ECF No. 23, p. 4).

(4) **Dr. Lehmann** - The ALJ considered the opinion of Dr. Lehmann and stated that his opinion "that there was no objective medical evidence of the claimant having any cardiac limitation or disability" was given significant weight. (ECF 11-2, p. 21). Plaintiff counters that this was only part of Dr. Lehmann's opinion and that the ALJ did not consider his full opinion. Plaintiff contends that Dr. Lehmann "retracted" his January 2009 opinion that was cited by the ALJ, yet the Commissioner disputes this characterization. The court agrees that the record does not support that Dr. Lehmann "retracted" his opinion. Dr. Lehmann's later opinions do not support a finding of disability. Although Dr. Lehmann, in a June 8, 2009 note found that rhythm disturbances had been detected by the pacemaker, he stated: "The episodes are always self terminating, and associated only minimal symptoms." (ECF 11, p. 559). In a May 4, 2009 note, Dr. Lehmann found "rare episodes of slow ventricular tachycardia," he further stated that "the patient is asymptomatic or minimally symptomatic with these bouts, which appear to be short-lived and well tolerated." (ECF 11, p. 571).

(5) **Dr. Li** - The ALJ considered the opinion of Dr. Li and stated that he gave it "little weight". He found that the opinion was formed "after only a brief assessment of the claimant, is based on his self-report, and was not based on any quantitative psychological or psychiatric testing." (ECF No. 11-2, p. 15). Further the ALJ found that Dr. Li's opinion was contrary to other assessments in the record

finding only mild depression. The ALJ's conclusions concerning alleged depression are supported by the record. In July 2008, Plaintiff saw a licensed clinical social worker for the reported problem of: "Several people mentioned that I might be depressed so I thought I should follow up." (ECF 11, p. 369). He told the social worker that "he did not think he was really depressed," but that others had told him he was not as cheerful and outgoing as in the past. (*Id.*). In September 2008, Plaintiff had a negative screening test for depression. (ECF 11, p. 428). Plaintiff saw Dr. Li only two months prior to his hearing before the ALJ, and at the hearing in March 2009 told the ALJ that he was not receiving any regular mental health counseling. (ECF 11-2, p. 66).

Plaintiff saw physicians in Alaska and Washington. He sought treatment at the VA Hospital and there saw various providers. After framing the point of error as the ALJ's failure to consider the opinions of **treating** providers, Plaintiff now acknowledges that Dr. Thompson was not a treating or examining provider, and argues that Dr. Margret, a psychiatry resident, was an examining provider. (ECF No. 23, p. 4). An ALJ is not required to discuss every piece of evidence in the record. *Howard v. Barnhart*, 341 F.3d 1006, 1010 (9th Cir. 2003). The ALJ gave clear and convincing reasons supporting his assessment of the opinions of Dr. Gehrett, Dr. Lehmann, and Dr. Li. Although the ALJ did not specifically discuss the opinion of Dr. Margret, he did give specific and legitimate reasons for his conclusion that Plaintiff suffered from only mild depression. The ALJ's decision was supported by substantial evidence.

### C. Did the ALJ err in rejecting Plaintiff's subjective complaints?

Plaintiff argues that the ALJ did not give clear and convincing reasons for rejecting his subjective complaints. The ALJ did not entirely reject Plaintiff's subjective complaints, nor did the ALJ make an affirmative finding of malingering. However, the ALJ did find that Plaintiff's complaints were not entirely credible

ORDER - 11

and were at times inconsistent with the medical record. The ALJ gave numerous clear and convincing reasons for his findings. The ALJ pointed out that Plaintiff claimed to have cardiac episodes on approximately 20 occasions between 2003 and 2006 that required emergency response, "yet no such records are found within the record nor do his medical appointment records indicate the claimant to have received emergency treatment during the relevant time period." (ECF No. 11-2, p. 20). As to Plaintiff's neck and back pain, the ALJ noted that Plaintiff's testimony was not supported by "even his own complaints to his health care providers." (*Id*. at 20). The ALJ observed that Plaintiff in May 2007 reported his neck pain as a 2 on a scale of 1 to 10. The record supports that Plaintiff on several instances reported his pain to health care providers as a 2 or 3 on scale of 1 to 10. In sum, the ALJ articulated numerous clear and convincing examples of instances where the ALJ concluded that Plaintiff's subjective complaints were inconsistent with the objective medical evidence. Reviewing the record as a whole, this court does not conclude that the ALJ's view of the evidence was unreasonable. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ did not err in discounting Plaintiff's subjective complaints.

D. **Did the ALJ err in not disqualifying himself?**

Plaintiff moved to recuse ALJ Chester because the ALJ had commented on a proposed Social Security rule change. Specifically Plaintiff objected to the ALJ stating in a letter that: "An Administrative Law Judge has to be concerned not only with the rights of the claimant appearing before him/her, but also with protecting the rights and purse of the American people." (ECF No. 16, p. 19). Plaintiff also claimed that this ALJ had a pattern of disfavoring treating providers when he ordered consultative exams. Plaintiff's counsel, James Tree, also contended that he is successful in "approximately 90%" of his Social Security cases, but that ALJ

ORDER - 12

Chester had denied "almost all" of the cases Mr. Tree had before him. Mr. Tree requested that his recusal motion be considered a standing motion in all cases before ALJ Chester.

Mr. Tree's argument suggesting bias on the part of ALJ Chester has been rejected by other judges in this District. See *Buck v. Astrue*, 10-3045, Report and Recommendation of Magistrate Judge Hutton (ECF No. 23, p. 18). In *Buck*, Mr. Tree advanced nearly identical arguments to those raised here and argued that "ALJ [Chester] had prejudged his case in some way related to generally saving taxpayers' money by denying benefits." Magistrate Judge Hutton rejected the argument finding that "no evidence that comes close to the required showing" of bias had been presented. (ECF No. 23, p. 18). Mr. Tree filed objections to the Report and Recommendation and offered further argument as to why ALJ Chester should have recused. District Judge Lonny Suko adopted the Report and Recommendation. (ECF No. 27) and rejected the challenge.

The court agrees that Plaintiff has not made the showing required for ALJ Chester to recuse. Plaintiff also argues that the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") requires the ALJ to set forth the reasons for denying a recusal motion in writing, and that ALJ Chester failed to do so. Plaintiff relies on HALLEX I-2-1-60. This argument is meritless. The ALJ set forth in writing at pages 1 and 2 of his Decision the reasons for denying the recusal motion. (ECF No. 11-2, p. 11-12). The ALJ noted that Mr. Tree had provided no evidence in support of his assertion that he denies "almost all" claimants. The ALJ also rejected Mr. Tree's arguments concerning a FOIA request and about his comment concerning proposed SSA rule changes. Plaintiff's argument additionally fails because the HALLEX does not "carry the force of law," and the Ninth Circuit has stated it does not "review allegations of non-compliance with its provisions." *Roberts v. Commissioner*, 644 F.3d 931, 933 (9th

ORDER - 13

Cir. 2011). The challenge to ALJ Chester is rejected.

### E. Did the ALJ err in posing an improper hypothetical?

Notably, this point is not set forth in the opening brief as one of the four issues that are being raised. (ECF No. 16, p. 8). However, it is discussed in the opening brief, and responded to by the Commissioner.

The ALJ's hypotheticals were appropriate. An ALJ is required to include only those limitations he finds supported by substantial evidence in a hypothetical question. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001). The ALJ did not err in framing the hypothetical questions or relying on the vocational expert's testimony.

### F. Does the record as a whole support the ALJ's determination that Plaintiff is not disabled?

Although the medical evidence of record is subject to differing reasonable interpretations, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Commissioner's and ALJ's decision is supported by substantial evidence in the record and is based on proper legal standards. It must therefor be affirmed. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

### VIII. CONCLUSION

For the aforesaid reasons, the Commissioner's decision must be and is affirmed.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED.**

3. The Clerk is directed to enter Judgment dismissing the Complaint and the

ORDER - 14

claims therein with prejudice.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

DATED this 14th day of March, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE
